**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RUBY ROLLE, ERWIN SIMMONS, as Co-Personal Representatives of the Estate of KENDALL ROLLE, Deceased.,**

      **Plaintiffs,**

**-vs-**              **Case No. 6:06-cv-714-ORL-19JGG**

**BREVARD COUNTY, FLORIDA, BREVARD COUNTY SHERIFF JACK PARKER, OFFICER TART, CPL. DONNA PATCH, OFFICER CATHY SNOW, PRISON HEALTH SERVICES, INC., CIRCLES OF CARE, INC., STEPHANIE ALTMAN, JUDY PENNY, JOHN DOE I, JOHN DOE II, and JOHN DOE III,**

      **Defendants.**
_____

## ORDER AND REQUIREMENT FOR CERTIFICATION BY COUNSEL AS TO FEDERAL RULE OF CIVIL PROCEDURE 11

This case comes before the Court on the following:

1.  Motion To Dismiss Amended Complaint By Defendants Parker, Tart, Patch, And Snow (Doc. No. 41, filed June 22, 2006);

2.  Defendants Prison Health Services, Inc. and John Doe II's Motion To Dismiss Amended Complaint And Incorporated Memorandum Of Law In Support Thereof (Doc. No. 43, June 23, 2006);

3.  Defendant Brevard County's Motion To Dismiss Plaintiffs' Amended Complaint (Doc. No. 44, filed June 26, 2006);

4.     Defendants', Circles Of Care, Inc., Stephanie Altman, Judy Penny And John Doe III, Amended Motion To Dismiss The Plaintiffs' Amended Complaint And Incorporated Memorandum Of Law (Doc. No. 51, filed July 5, 2006);

5.     Plaintiffs' Response To Defendant Brevard County' Motion To Dismiss (Doc. No. 52, filed July 6, 2006);

6.     Response To Circles Of Care Amy Diamond And John Doe III Motion To Dismiss (Doc. No. 53, filed July 10, 2006);

7.     Response To Prison Health Services, Inc. And John Doe II's Motion To Dismiss (Doc. No. 54, filed July 12, 2006); and

8.     Plaintiffs' Response To Defendant Response To Defendant's Parker, Tart, Patch And Snow's Motion To Dismiss (Doc. No. 55, filed July 12, 2006).

### I. Background of the Case

**A.     Procedural History**

Plaintiffs Ruby Rolle and Erwin Simmons, as co-personal representatives of the estate of Kendall Rolle, originally brought a fifteen-count Complaint against Defendants Brevard County, Florida, Brevard County Sheriff Jack Parker, Officer Tart, Cpl. Donna Patch, Officer Cathy Snow, Prison Health Services, Inc., Circles of Care, Inc., Stephanie Altman, Judy Penny, John Doe I, John Doe II, and John Doe III in state court. (Doc. Nos. 1, 2). Defendants thereafter removed the lawsuit to this Court, and each Defendant moved to dismiss the Complaint. (*See* Doc. Nos. 3, 5, 8, 27, 40). Plaintiffs then filed a sixteen-count Amended Complaint with the Court. (Doc. No. 37). In response, each Defendant filed a second Motion to Dismiss. (Doc. Nos. 41, 43, 44, 51). Defendants' motions at Docket Numbers 3, 5, 8, 27, 40 are therefore moot.

### B.     The Amended Complaint

At this stage, the Court must view the allegations of the Amended Complaint in the light most favorable to Plaintiffs, consider its allegations as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir. 1994). Because of the number of parties to this lawsuit, its helpful to identify the actors involved and then summarize the allegations of the Amended Complaint.

### 1.     The Actors

Plaintiffs Ruby Rolle and Erwin Simmons ("Plaintiffs") are the duly appointed co-personal representatives of the estate of Kendall Rolle ("Rolle"). (Doc. No. 37, ¶¶ 1, 13-16). Rolle, Plaintiffs' minor son, died while incarcerated in the Brevard County Detention Facility (the "Facility"). (*Id.*, ¶¶ 1, 13-16, 19, 20).

According to the allegations of the Amended Complaint, Brevard County (the "County"), a political subdivision of the State of Florida, was responsible for funding the Facility and for providing medical care for individuals incarcerated there. (Doc. No. 37, ¶¶ 2, 4). Defendant Jack Parker was the Sheriff of the County ("Sheriff Parker"), and he was responsible for managing, operating, and maintaining the Facility.[1] (*Id.*, ¶ 3). Defendants Officer Tart ("Tart"), Cpl. Donna Patch ("Patch"), Officer Cathy Snow ("Snow") were either employed by the County directly or were employees of the Brevard County Sheriff's Office. (*Id.*, ¶ 9). Officer Angela Twigg was also a member of the Facility's staff, but she is not a party to this lawsuit. (*Id.*, ¶ 23). The Court will refer

---

[1] The Court infers from this averment that Sheriff Parker was designated by the County Commission as the Chief Correctional Officer of the Brevard County correctional system as provided in Section 951.06 and Section 951.061 of the Florida Statutes.

to Sheriff Parker, Tart, Patch and Snow from time to time in this Order as the "non-medical Defendants."

Defendant Prison Health Services, Inc. ("PHS") had contracted "with the County and/or [Sheriff] Parker and/or the Facility" to provide medical services for inmates incarcerated at the Facility. (*Id.*, ¶¶ 6, 7). Likewise, Defendant Circles of Care, Inc. ("Circles") maintained a contractual relationship "with the County and/or [Sheriff] Parker and/or the Facility." (*Id.*, ¶ 8).[2] Defendants Stephanie Altman ("Altman"), Judy Penny ("Penny"), and John Doe I were allegedly employees of either PHS or Circles or Sheriff Parker. (*Id.*, ¶ 9). John Doe II was an agent of PHS, separate and apart from the individuals already named in the suit, and John Doe III was an agent of Circles. (*Id.*, ¶¶ 99, 105). However, the Amended Complaint also identifies Defendants John Doe I, John Doe II, and John Doe III as "unknown agents of Circles of Care." (*Id.*, ¶ 141). The Court will refer to PHS, Circles, Altman, and Penny, from time to time in this Order as the "medical Defendants."

Gene Miller, an individual who is otherwise not identified and whose relationship to the parties in this lawsuit is omitted from the Amended Complaint, allegedly reported the conditions at the Facility to either Sheriff Parker or his predecessor. (*Id.*, ¶¶ 53, 117, 141).

    2.    The Allegations

According to the allegations of the Amended Complaint, Rolle was incarcerated at the Facility on December 29, 2003. (*Id.*, ¶ 20). On the same day, an unidentified individual from the Facility's staff filed a "Special Security Request" indicating that Rolle had previously attempted suicide, and an additional security request was filed the next day indicating that the Facility's personnel should

---

[2] The Amended Complaint does not indicate the purpose of the contract identified in paragraph 8, but further allegations state that Circles provided mental health services to the inmates of the Facility. (*See* Doc. No. 37, ¶¶ 105, 111).

monitor Rolle every fifteen minutes and insure that he was assigned a roommate at all times. (*Id.*, ¶ 22). On the same day as the second security request a third security request was issued by "forensics" which removed Rolle from direct watch. (*Id.*, ¶ 23). Thereafter, the officer on duty, Angela Twigg, moved Rolle into the general population of the Facility. (*Id.*). On January 18, 2004, Rolle's family reported to an unidentified member of the Facility's staff that they were "extremely concerned" about his mental health and that Rolle intended to seriously injure or kill himself. (*Id.*, ¶ 25). More than two weeks later, on February 2, 2004, Rolle committed suicide by hanging while Patch, Tart and Snow were on duty at the Facility. (*Id.*, ¶ 27).[3]

The averments of the Amended Complaint state that members of the Facility's staff continually ignored the mental health needs of Rolle and that Sheriff Parker consistently failed to maintain a proper number of staff personnel at the Facility. (*Id.*, ¶¶ 28). Plaintiffs allege that Defendants failed to provide adequate treatment for prisoners with mental illnesses and that such treatment discriminates against such prisoners. (*Id.*, ¶¶ 29-31). They also allege that there was a consent decree concerning overcrowding at the facility and that Defendants' failure to follow such decree resulted in the deaths of four suicidal prisoners, in addition to Rolle's own death, between December 20, 2003 and March 21, 2004. (*Id.*, ¶¶ 32-24).[4]

---

[3] The Amended Complaint alleges that the Facility's staff unsuccessfully attempted to revive Rolle by performing cardiopulmonary resuscitation. (Doc. No. 37, ¶ 27). Later, Plaintiffs also allege that emergency personnel and staff attempted to revive Rolle using inoperable oxygen tanks and a "deliberator", which the Court construes to refer to a "defibrillator". (*See id.*, ¶ 124). It appears that the latter allegations are the same as allegations which appear in an unrelated case. (*See* Case No. 6:06-cv-715-Orl-31JGG).

[4] Although Plaintiffs allege in paragraph 32 that five inmates committed suicide at the Facility within this time frame, the Amended Complaint identifies two individuals who had done so prior to Rolle's death on February 2, 2004. (*See* Doc. No. 37, ¶ 32).

### 3. The Claims

The Amended Complaint contains sixteen separate claims for relief. Five Counts are brought against Sheriff Parker alone (Count I through Count V); two Counts are brought against the County alone (Count VI and Count VII); two counts bring claims against PHS and John Doe II (Count VIII and Count IX); four counts recite claims against Circles, Altman and Penny (Count X, Count XI, Count XIV, and Count XV); one Count is brought against John Doe III (Count XI); two Counts assert claims against Snow, Tart and Patch (Count XII and Count XIII); and the final count recites a claim against all Defendants (Count XVI). In this Order, the Court discusses similar claims against the different Defendants together.

### a. Deprivation of Civil Rights – Title 42 U.S.C. § 1983 – Count I through Count IV (Sheriff Parker), Count VI (The County), Count VIII (PHS and John Doe II), Count X and Count XIV (Circles, Altman, and Penny), and Count XII (Snow, Tart, and Patch)

Plaintiffs bring nine Counts against Defendants alleging violations of Title 42 U.S.C. § 1983. In sum, they allege a number of acts and omissions which resulted in Rolle's death, including such Defendants' failure to (1) properly train the Facility's staff to identify or manage inmates who are suicidal and to monitor such inmates (*id.*, ¶¶ 36-39, 49, 73, 117), (2) properly staff the Facility with guards or medical professionals (*id.*, ¶¶ 40, 45, 72, 75), (3) provide proper and safe housing for such inmates (*id.*, ¶¶ 53-54, 67-68, 72, 74, 117-118), and (4) provide adequate medical care for such inmates or to supervise the provision of such care (*id.*, ¶¶ 69-71, 73, 94, 106, 130). In addition, Plaintiffs allege that such failures constituted a custom, policy or practice of Defendants which rose to the level of deliberate indifference or willful and intentional conduct. The allegations of the Amended Complaint omit whether such claims are brought against the non-medical Defendants in their official or individual capacity.

-6-

**b.** **Florida Wrongful Death Act – FLA. STAT. § 768.16 *et seq.* – Count V (Sheriff Parker), Count VII (The County), and Count XIII (Snow, Tart, and Patch)**

The Amended Complaint brings three Counts under the Florida Wrongful Death Act against the non-medical Defendants in their official capacity. The averments state that Defendants either had a non-delegatable duty to provide medical care to Rolle or to prevent Rolle from committing suicide or to provide adequate housing and/or monitoring of Rolle. (*Id.*, ¶¶ 59, 87, 123). Further, Plaintiffs allege that Defendants breached that duty and that such breach was the proximate cause of Rolle's death. (*Id.*, ¶¶ 60, 88, 124).

**c.** **Common Law Claims For "Reckless Indifference" – Count IX (PHS and John Doe II), Count XI (Circles, Altman, Penny, and John Doe III), and Count XV (Snow, Tart, and Patch)**

In the Amended Complaint, Count IX, Count XI, and Count XIII are designated by Plaintiffs as "state law tort claim of reckless indifference". Plaintiffs allege that the medical Defendants and Snow, Tart, and Patch failed to provide adequate mental health care "in reckless indifference" to the civil rights of individuals at the Facility. (*Id.*, ¶¶ 100, 112, 136). Rolle's death, avers Plaintiffs, is a direct and proximate result of this negligence and reckless indifference. (*Id*, ¶¶ 101, 113, 137).

**d.** **Conspiracy To Interfere With Civil Rights – Title 42 U.S.C. § 1985 – Count XVI (All Defendants)**

In Count XVI, Plaintiffs allege that all the Defendants "conspired to violated (sic) the rights of KENDALL ROLLE protected by the Fourteenth Amendment in violation each individually,[5] and in their official capacity failed to properly house, watch, monitor, detect and otherwise prevent the suicide of KENDALL ROLLE, and several other inmates . . . ." (*Id.*, ¶ 141). Defendants, while acting

---

[5] The allegations of the Amended Complaint conflict in this regard. (*See* Doc. No. 37, ¶ 144, requesting damages against Defendants in their official capacity *only*).

in concert, allegedly "failed to remedy known dangers at the jail", "failed to otherwise prevent, and provide for suicidal inmates", and failed to "provide proper and safe housing to inmate who have been identified as suicidal". (*Id.*). These failures allegedly led to Rolle's death. (*Id.*).

## II. Applicable Standards

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *Jackson*, 21 F.3d at 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court must limit its consideration to this pleading and written instruments attached to it as exhibits. FED. R. CIV. P. 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle relief. *E.g.*, *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Moreover, the Court is mindful that the Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that claims under Title 42 U.S.C. § 1983 are not required to meet a heightened pleading standard unless such claims are asserted against government officials in their individual capacities. *Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004); *See also Leatherman v. Tarrant County Narcotics Intelligence & Corrdination Unit*, 507 U.S. 163 (1993).

## III. Analysis

In the following discussion, the Court first considers Plaintiffs' Section 1983 claims. Next, the Court addresses the state law claims for wrongful death and reckless indifference. The Court then turns to Plaintiffs' claim brought under Section 1985, and lastly it considers the fictitious party pleading in this case.

A.       **Section 1983 Claims**

Plaintiffs allege a wide range of civil rights claims under Title 42 U.S.C. § 1983 against all of the Defendants in the instant case. The Court will first discuss two miscellaneous arguments raised in Defendants' Motions to Dismiss that relate to all of Plaintiffs' Section 1983 claims. The remainder of this section discusses the three categories of claims raised in the Amended Complaint. The first category concerns Plaintiffs' claims against Sheriff Parker and the County for the jail conditions. The next category embraces Defendants' failure to provide adequate medical care to Rolle.[6] The last category of claims against Defendants is directed toward whether there was adequate supervision and training for the Facility's staff.

1.       **Miscellaneous Arguments Concerning Plaintiffs' Section 1983 Claims**

As an initial matter, Defendants argue that Chapter 766 of the Florida Statutes bars Plaintiffs' Section 1983 claims because Plaintiffs are attempting to artfully plead medical malpractice claims. Such argument is not persuasive, however, because Plaintiffs' claims have been brought under federal law and are separate and distinct from medical malpractice claims brought under state law. *See Barnett v. Okeechobee Hosp.*, 283 F.3d 1232 (11th Cir. 2002) (applying the notice requirements of the Federal Tort Claims Act in a medical malpractice action against the Veterans' Administration instead of those set forth in the Florida Statutes); *Rand v. Hatch*, 762 So. 2d 1001 (Fla. Dist. Ct. App. 2000) (applying federal maritime law and disregarding the requirements of Chapter 766 where the alleged wrongful act took place on a cruise ship in navigable waters). Thus, the requirements of Florida law are not applicable to Plaintiffs' Section 1983 claims.

---

[6] Jail suicide civil rights claims are generally analyzed as a failure to provide medical care. *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990).

Secondly, several of the non-medical Defendants raise the issue of qualified immunity in their Motions To Dismiss. These arguments raise the threshold issue of whether the non-medical Defendants are being sued in their individual capacity or official capacity or both. In the instant case, Plaintiffs' statement of the claims is ambiguous as to whether such claims are being brought against the non-medical Defendants in their individual or official capacities. Almost all of the claims in the Amended Complaint omit the capacity in which the non-medical Defendants are being sued by Plaintiffs. The only part of the Amended Complaint that indicates it is being brought against the non-medical Defendants in their individual capacities is Count XVI. (Doc. No. 37, ¶ 141). Nevertheless, Count XVI only seeks damages against such Defendants acting in their official capacity. (*See id.*, ¶ 141). Thus, even Count XVI is ambiguous as to the capacity of the non-medical Defendants. The caption of the complaint, on the other hand, indicates that such Defendants are being sued in their official capacities only.[7]

Based on the above, the Court construes the Amended Complaint as bringing its Section 1983 claims against the non-medical Defendants in their official capacities only. In the event that Plaintiffs intended to bring their Section 1983 claims against the non-medical Defendants in their individual capacities, the Court grants Plaintiffs leave to clearly indicate this in an amended pleading. If Plaintiffs choose to file an amended pleading, they should be mindful that Section 1983 claims brought against the non-medical Defendants in their individual capacities are subject to a heightened pleading standard once the issue of qualified immunity is raised. *Swann*, 388 F.3d at 838.

---

[7] While the caption of a complaint is generally not part of a plaintiff's statement of the claim under Federal Rule of Civil Procedure 8, in cases where the statement of the claim is ambiguous, it sometimes is useful to look to the caption to resolve the ambiguity. *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1023 n.4 (11th Cir. 2001).

## 2.      Claims Against Sheriff Parker And The County For Jail Conditions

To prevail on a claim under Section 1983, a plaintiff must demonstrate both (1) that the

defendant deprived him of a right secured under the Constitution or federal law and (2) that such a

deprivation occurred under color of state law.[8] *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th

Cir. 1998). In doing so, a plaintiff must also establish "an affirmative causal connection between the

official's acts or omissions and the alleged constitutional deprivation." *Swint v. City of Wadley*, 51

F.3d 988, 999 (11th Cir. 1995).[9]

Plaintiffs base part of their Section 1983 claims against Sheriff Parker and the County on

overcrowding at the facility and on the presence of ultra-hazardous conditions in each cell of the

facility. This claim is based on violations of Rolle's rights under either the Eighth or Fourteen

Amendment.[10] "The Constitution does not mandate comfortable prisons, but neither does it permit

---

[8] The second  requirement is not at issue in the instant case because each Defendant was (1) acting under the color of state law in his or her position as a prison official or (2) performing a function which has traditionally been a function of the state. *See, e.g.*, *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985); *Unterberg v. Correctional Med. Sys., Inc.*, 799 F. Supp. 490, 494 (E.D. Pa. 1992).

[9] Plaintiffs cannot rely on theories of vicarious liability or respondeat superior to establish the required causal link. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115-16 (11th Cir. 2005).

[10] Although Plaintiffs' claims are allegedly based on violations of the Fourth, Eighth, and Fourteenth Amendments, there are no factual allegations in the Amended Complaint which support a claim for a violation of any right protected by the Fourth Amendment. (*See* Doc. No. 37). The Amended Complaint also does not contain sufficient factual allegations to show that Defendants' conduct violated the protections of the Eight Amendment or the Fourteenth Amendment or both. Plaintiffs allege only that Rolle was incarcerated. (*Id.*, ¶ 20). If he was a pre-trial detainee, then his rights under the Due Process clause of the Fourteenth Amendment may have been violated. *Hamm v. Dekalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985). If Rolle was an inmate, the allegations would relate to a violation of Rolle's Eighth Amendment rights. *Id.* However, because the minimum standards allowed by the Due Process clause of the Fourteenth Amendment are the same as those under the Eighth Amendment, the Court need not address such latent ambiguity in the Amended Complaint.

inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Valdes v. Crosby*, 450 F.3d 1231, 1236 (11th Cir. 2006) *see also Helling v. McKinney*, 509 U.S. 25, 31 (1993). Prison officials will be liable for violating the Eighth Amendment when they are deliberately indifferent to the substantial risk of serious harm to inmates. *Marsh*, 268 F.3d at 1027. In other words, officials must be aware of a substantial risk of serious harm to the inmates and not take reasonable measures to alleviate that risk in order to assume liability for such violations. *Id.* The County, on the other hand, only assumes liability under Section 1983 for acts for which it is actually responsible. *Id.* The Amended Complaint avers that the County was responsible for the funding of the Facility and that the Sheriff was responsible for the day-to-day operation of the Facility. (Doc. No. 37, ¶¶ 34). Thus, in the instant case, the County will have violated Rolle's Eighth Amendment rights only if its failure to fund the Facility constituted deliberate indifference to a substantial risk of serious harm to the prisoners. *See Marsh*, 268 F.3d at 1027.

In the Amended Complaint, Plaintiffs allege that Sheriff Parker and the County were knew that the Facility was overcrowded and contained cells having ultra-hazardous conditions. The Court assumes, as it must at this stage of litigation, that such overcrowding and ultra-hazardous conditions posed a substantial risk of harm to Rolle. Moreover, Plaintiffs specifically allege that Sheriff Parker failed to act to correct such conditions and that such omissions contributed to Rolle's death. The Court infers from the allegations of the Amended Complaint that Plaintiffs also contend that the County failed to fund the changes necessary to correct such conditions.

Plaintiffs have, therefore, stated a claim under Section 1983 against Sheriff Parker and the County for the conditions of the Facility.

-12-

### 3.        Failure To Provide Medical Care

In a prisoner suicide case, to prevail under Section 1983 under either the Eighth or Fourteenth Amendment, a plaintiff must show that the jail official displayed "deliberate indifference" to the prisoner's taking of his own life. *E.g.*, *Edwards v. Gilbert*, 867 F.2d 1271, 1274-75 (11th Cir. 1989); *Popham*, 908 F.2d at 1563 ("Because jail suicides are analogous to the failure to provide medical care, deliberate indifference has become the barometer by which suicide cases involving convicted prisoners as well as pretrial detainees are tested."). In this context, deliberate indifference refers to a strong likelihood rather than a mere possibility that the self-infliction of harm will occur. *Popham*, 908 F.2d at 1563. A plaintiff's factual allegations must do more than allege negligence, medical malpractice, accident or the poor exercise of medical judgment in order to state a Section 1983 claim. *Estelle v. Gamble*, 429 U.S. 97, 104-107 (1976); *see also Freeman v. Lebedovych*, 185 Fed. Appx. 943, *2 (11th Cir. 2006) ("Similarly, failure to take measures to protect an inmate from committing suicide can only constitute deliberate indifference so long as it is a failure that goes beyond negligence or medical malpractice.").

In addition, an allegation of deliberate indifference must be considered in light of the level of knowledge possessed by the prison officials involved or that which should have been known as to an inmate's suicidal tendencies. *Popham*, 908 F.2d at 1564. That is, a defendant must know of a particular prisoner's suicidal tendencies to be held accountable for a suicide. *Cook ex rel. Tessier*, 402 F.3d at 1117. As explained by the Eleventh Circuit:

> under our precedent, the defendant must have had "notice of the suicidal tendency of the individual whose rights are at issue in order to be held liable for the suicide of that individual." Deliberate indifference, in the jail suicide context, is not a question of the defendant's indifference to suicidal inmates or suicide indicators generally, but rather it "is a question of whether a defendant was deliberately indifferent to an individual's mental condition and the likely consequences of that condition." For this reason,

"[a]bsent knowledge of a detainee's suicidal tendencies, [our] cases have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference."

*Id.* (citations omitted).

The Court now turns to applying the above principles to the two major classes of Defendants in the instant case.

> **a.   Section 1983 Claims For The Medical Defendants' Failure To Provide Medical Care**

Plaintiffs contend in the Amended Complaint that the medical Defendants are liable under Section 1983 for their failure to "provide adequate mental health care to inmates" or to "properly diagnosis and identify those individuals with mental health problems." (Doc. No. 37, ¶¶ 94, 95, 106, 107). Such statements form the extent of the allegations against the medical Defendants, and the Court discerns two critical omissions from Plaintiffs' claims. First, such allegations amount to nothing more than averments that the Defendants have negligently failed to diagnosis mental health needs and/or provide treatment for the mental health needs of the Facility's prisoners. Both the Supreme Court in *Estelle* and the Eleventh Circuit in *Freeman* make clear that actions amounting to mere negligence or medical malpractice, standing alone, cannot form basis of a valid claim under Section 1983. *See Estelle*, 429 U.S. at 104-107; *Freeman v. Lebedovych*, 185 Fed. Appx. 943, *2 (11th Cir. 2006). Secondly, Plaintiffs make such allegations generally and without an express or implied averment that the medical Defendants knew of Rolle's suicidal tendencies. Such knowledge is required to hold the medical Defendants accountable under Section 1983. *Cook ex rel. Tessier*, 402 F.3d at 1117.

Thus, the Amended Complaint fails to state a claim under Section 1983 against the medical Defendants.

b.      **Section 1983 Claims For The Remaining Defendants' Failure To Provide Medical Care**

The remaining claims are brought by Plaintiffs against Sheriff Parker and the County.[11] As to Sheriff Parker, it appears that Plaintiffs are basing their claims on Sheriff Parker's role in instigating and adopting the policies or practices which they contend led to Rolle's death. *See Ancata*, 769 F.2d at 706 (a supervisor is "fully responsible for his own actions and/or policies" that deprive an inmate of his constitutional rights). Plaintiffs allege that at least two inmates committed suicide at the Facility in the months preceding Rolle's death. (Doc No. 37, ¶ 32). While a single incident may not indicate the presence of a policy or custom, such a policy or custom may be inferred at the pleadings stage from multiple incidents. *See Marsh*, 268 F.3d at 1037; *Caldwell v. City of Elwood*, 959 F.2d 670, 672 (7th Cir. 1992); *cf. Chestnut v. City of Quincy*, 513 F.2d 91, 92 (5th Cir. 1975) (reasoning that a police supervisor who had notice of past conduct of subordinates and failed to prevent recurrence of such misconduct states section 1983 claim for personal liability); *but see Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1540-41 (11th Cir. 1994) (concluding, on summary judgment, that a history of two prior suicides and twenty-seven attempted suicides at a jail does not establish a "strong likelihood" that a suicide would result from the defendants acts or omissions).

According to the Amended Complaint, Sheriff Parker is responsible for the operation of the Facility, and the Court must assume at this stage of litigation that he also had knowledge of Rolle's suicidal tendencies and Rolle's family's concerns as to his well-being. *Cf. Nichols v. Maynard*, 2006 W.L. 3161488, *2 (11th Cir. 2006) (assuming that the defendants, who were employees of a state

---

[11] The claims brought against Snow, Tart, and Patch are, in effect, made against Sheriff Parker. *Hobbs v. Roberts*, 999 F.2d 1526, 1530 (11th Cir. 1993) ("[T]o impose official liability on a government entity amenable to suit, a plaintiff need do no more than name the government entity defendant; it is unnecessary also to name specific agents.").

agency, had knowledge of the information contained in that agency's records). Consequently, drawing inferences in the light most favorable to Plaintiffs, it can be inferred that Sheriff Parker had notice of Rolle's suicidal tendencies and had notice that the policies then in effect at the Facility were not preventing inmate suicides. Based on these inferences and because this litigation is in its formative stage, the Court concludes that there are sufficient allegations in the Amended Complaint to support a claim of deliberate indifference by Sheriff Parker.

The Amended Complaint also avers that the County had established a policy in which the transfer of inmates from the Facility to the hospital was discouraged in order for the County to save money. (Doc. No. 37, ¶ 71). Allegedly, this policy contributed to Rolle's death. (*Id.*, ¶ 76). These allegations are sufficient to state a claim for municipal liability under Section 1983. *See Ancata*, 769 F.2d at 705-06.

### 4.     Plaintiffs' Section 1983 Claims Based on Failure to Train and Supervise

Plaintiffs also bring claims against Sheriff Parker and the County for failing to train and supervise the Facility's staff in the identification of mentally ill inmates. A failure to adequately train subordinates constitutes an actionable policy or custom for Section 1983 purposes "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). "Failure to train can amount to deliberate indifference when the need for more or different training is obvious, . . . and when the failure to train is likely to result in the violation of a constitutional right." *Belcher v. City of Foley*, 30 F.3d 1390, 1397-98 (11th Cir. 1994). In sum, a failure to train satisfies the subjective prong of the Eighth Amendment analysis and imposes supervisory liability on a prison official only where such failure evinces a disregard of the strong likelihood that, absent such training, prison personnel would

-16-

subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

In the instant case, it can be inferred from the averments of the Amended Complaint that, at the time of Rolle's death, Sheriff Parker and the County had notice that the policies in effect at the Facility were not preventing inmate suicides.[12] Whether such notice evinces a strong likelihood that other inmates, including Rolle, would cause self-inflicted harm is a matter better resolved on motion for summary judgment or at trial. It is sufficient, at this stage of litigation, to draw an inference in the light most favorable to Plaintiffs and conclude that such a strong likelihood existed.

### B.    Florida Wrongful Death Act Claims

Next, the Court considers the wrongful death claims brought against the non-medical Defendants in Count V (Sheriff Parker), Count VII (The County) and Count XIII (Snow, Tart, and Patch).[13] The Florida Supreme Court has described the relevant inquiry as follows:

> [I]f a duty of care is owed, it must then be determined whether sovereign immunity bars an action for an alleged breach of that duty. In making this assessment, it is necessary to ascertain the character of the allegedly negligent governmental act or omission. As this Court has determined, basic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity.

---

[12] For the purposes of Section 1983, it appears that Plaintiffs are suggesting, *inter alia*, that the County has delegated final authority to make decisions to Sheriff Parker. The Sheriff's adopted policies, therefore, are the official policies of the County. *See Hearn v. City of Gainesville*, 688 F.2d 1328 (11th Cir. 1982), *overruled on other grounds by McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994).

[13] These claims were brought against Defendants Sheriff Parker, Snow, Tart, and Patch in their official capacity only. The Court need not, then, address whether a claim against these Defendants in their individual capacity is barred by Section 768.28(9)(a), of the Florida Statutes. (*See* Doc. No. 41, pp. 10-11).

*Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 933 (Fla. 2004) (citation omitted). It is sufficient, in light of the following discussion of sovereign immunity, to initially presume that all Defendants owe a duty of care to Rolle. Once the Court has addressed the issue of sovereign immunity, it will return to the questions of whether the remaining Defendants owed Rolle a duty of care and whether they breached such a duty.

### 1.      Sheriff Parker and the County's Sovereign Immunity

In Florida, the analysis sovereign immunity involves a characterization of the allegedly negligent governmental act or omission as either a discretionary or operational function of the state government. *See id.* A discretionary function is one in which the challenged governmental act involved an exercise of executive or legislative power such that the Court would inappropriately entangle itself in fundamental questions of policy and planning were it to entertain the plaintiff's tort claim. *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999). "An 'operational' function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Id.* (citation and some internal quotation marks omitted). This exception to Florida's general waiver of sovereign immunity that "is grounded in the doctrine of separation of powers." *Kaisner v. Kolb*, 543 So. 2d 732, 736-37 (Fla. 1989). Thus, Florida courts reason that "it would be an improper infringement of separation of powers for the judiciary, by way of tort law, to intervene in fundamental decisionmaking of the executive and legislative branches of government, including the agencies and municipal corporations they have created." *Id.*

As can be gleaned from the above discussion, the wrongful death claims in the instant case are barred by sovereign immunity to the extent that Plaintiffs seek damages for the discretionary

governmental acts of Sheriff Parker and the County. Florida courts hold that the"operation and maintenance" of prisons is a discretionary function of the sheriff, as an independent officer under the Florida Constitution, and counties. *See White v. Palm Beach County*, 404 So. 2d 123, 125 (Fla. Dist. Ct. App. 1981) ("[A]ny aspect of the complaint based upon the inadequacies of the jail caused by the jail's inability to adequately house a population larger than it was originally intended for are within the protection of the sovereign immunity doctrine.").

In addition, under Florida law, the County is not presumed to be "responsible for the day-to-day detailed operation of the jail. . . . That is the duty and responsibility of the sheriff." *Baugher v. Alachua County*, 305 So. 2d 838, 839 (Fla. Dist. Ct. App. 1975). In other words, the County does not make "operational" decisions concerning the Facility. *Id.* Such decisions are the province of the Sheriff. *Id.* Therefore, because there is no allegation in the Amended Complaint that the County is directing the operation of the Facility, Plaintiffs do not state a wrongful death claim against the County.

Likewise, Plaintiffs' wrongful death claims based on a "failure to train" fall within the discretionary functions of Sheriff Parker and the County. In the Amended Complaint, Plaintiffs do not challenge the implementation or operation of the current training program at the Facility as it was applied to the three officers on duty at the time of Rolle's death. Thus, it appears that Plaintiffs are challenging the decisions of Sheriff Parker regarding how to train the Facility's staff and what subject matter to include in such training. Such challenges fall squarely within Florida's sovereign immunity. *Cook ex rel. Tessier*, 402 F.3d at 1118-19; *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265-66 (11th Cir. 2001).

Therefore, the only remaining basis in the Amended Complaint for holding Sheriff Parker or the County liable under the Florida Wrongful Death Act is whether such Defendants breached their duty to provide medical care to Rolle during his incarceration.[14]

### 2.     Wrongful Death Claims Against the Non-Medical Defendants

Sheriff Parker, Snow, Tart, and Patch argue that Plaintiffs have failed to state a claim for wrongful death because any duty they may have had did not extend to preventing a suicide that was not reasonably foreseeable. (Doc. No. 41, p. 10). Plaintiffs respond by arguing that "Defendants either misread, [sic] or misapply the law cited in their Motion." (Doc. No. 55, p. 6).[15]

In Florida, "corrections officers have a duty to use reasonable care to insure the safety of inmates during their incarceration." *Ferguson v. Perry*, 593 So. 2d 273, 277-78 (Fla. Dist. Ct. App. 1992). Prison officials have a duty to render medical treatment once they know or have reason to know that an inmate is ill or injured and a duty to render such treatment until additional assistance can be obtained. *Id.* (applying section 314A of the Restatement (Second) of Torts). The comments to Section 314A of the Restatement help define the outer boundaries to this duty:

> e. The duty in each case is only one to exercise reasonable care under the circumstances. The defendant is not liable where he neither knows nor should know of the unreasonable risk, or of the illness or injury. . . . He is not required to take any

---

[14] The Court grants leave to Plaintiffs to file an Amended Complaint which complies with this Order and states a basis for a claim that falls within the operational functions of Defendants.

[15] The only case counsel for Plaintiffs identifies in support of this argument is *Ancata v. Prison Health Servs.*, 769 F.2d 700 (11th Cir. 1985). The language in that case discussing a "non-delegable duty" does not, however, relate to a state law wrongful death claim. *Id.* at 704. Instead, the Court was using a broad analogy to describe the type of governmental liability that arises from an established policy and practice under section 1983. *Id.* The limits of such analogy are readily apparent, and the Court recognized such limits by including a cautionary footnote in the margin. *Id.* at 704 n.8.

action where the risk does not appear to be an unreasonable one, as where a passenger appears to be merely carsick, and likely to recover shortly without aid.

f. The defendant is not required to take any action until he knows or has reason to know that the plaintiff is endangered, or is ill or injured. He is not required to take any action beyond that which is reasonable under the circumstances. In the case of an ill or injured person, he will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained . . . .

*Id.* at 277 n.5 (quoting section 314A of the Restatement (Second) of Torts).

In the instant case, the Court assumes, as it must on a motion to dismiss, that the non-medical Defendants were aware of Rolle's mental health problems. As described in comment f of the Restatement, a non-medical defendant is not required to take any action beyond which is reasonable under the circumstances. *See* 593 So. 2d at 277. For guards faced with sick or injured inmates, such actions are generally confined to rendering such assistance as the guard reasonably can under the circumstances and taking steps to turn the inmate over to a medical professional. *Id.* The non-medical Defendants in the instant case, according to the allegations of the Amended Complaint, relied upon "forensics" to determine whether to keep Rolle on a heightened watch. (Doc. No. 37, ¶¶ 22, 23). Personnel from forensics removed Rolle from direct watch, but the Amended Complaint is silent as to the qualifications of the forensics personnel. (*Id.*, ¶ 23). If the personnel from forensics were physicians or other mental health professionals, then perhaps the non-medical Defendants discharged their duty under Florida law. *See Ferguson*, 593 So. 2d at 277. However, at this point in litigation, the Court cannot assume that the non-medical Defendants directed Rolle to the discerning eye of a mental health professional. If such Defendants did not do so, their actions would not be reasonable under Florida law. Therefore, Defendants' motions to dismiss these claims must be denied.

C.        **Common Law Claims For "Reckless Indifference"**

Circles, Altman, Penny, and PHS contend that Count IX, Count XI, and Count XV of the

Amended Complaint are artfully pleaded claims for medical malpractice, and such claims, therefore,

are subject to the pre-suit requirements prescribed by the Florida Statutes. (Doc. No. 43, p. 9; Doc.

No. 51, p. 10). Plaintiffs respond by arguing that the subject claims do not rely on the medical

negligence standard of care but rely instead on the "reckless indifference" standard. (Doc. No. 53,

pp. 2-5; Doc. No. 54, pp. 2-6).

The parties do no more than stake out the rough outline of their contentions regarding the

"reckless indifference" claims, but the Court need not delve too deeply into the nuances of Florida

medical malpractice law. For the purposes of this Order, the Court assumes that the requirements of

the Florida Statutes apply to these claims.[16] Plaintiffs' allegations are directed at either the failure to

render "mental health care" to Rolle or negligence resulting from the rendering of such care. They

do not otherwise described the nature of the wrongful "mental health care", however. Such ambiguity

calls into question whether the medical Defendants are health care providers within the meaning of

Florida law.

The Florida Legislature has enacted an extensive statutory regime regulating claims for

medical malpractice. *See J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, 947-49 (Fla.

1994); *Weinstock v. Groth*, 629 So. 2d 835 (Fla. 1993). In one part, Florida law sets a two-year

limitation period for actions for medical malpractice. *See* FLA. STAT. § 95.11(4)(b); *J.B.*, 635 So. 2d

at 947. In another part, Chapter 766 of the Florida Statute, Florida law provides specific standards

---

[16] The Court makes this assumption for the purpose of disposing of Defendants' arguments
in this Order. This issue may be raised in the future on motion for summary judgment, if appropriate,
and may be more completely analyzed and argued by the parties at such time.

for recovery in medical malpractice actions. *J.B.*, 635 So. 2d at 948. Chapter 766 also establishes

notice and pre-suit screening requirements which must be satisfied to bring a medical malpractice

action. *Id.* Florida's statutory scheme, however, only regulates "health care providers" and medical

malpractice actions. The Florida Legislature has defined the individuals who serve as health care

providers as

> physicians licensed under chapter 458, osteopathic physicians licensed under chapter 459, podiatric physicians licensed under chapter 461, optometrists licensed under chapter 463, dentists licensed under chapter 466, chiropractic physicians licensed under chapter 460, pharmacists licensed under chapter 465, or hospitals or ambulatory surgical centers licensed under chapter 395.

FLA. STAT. § 766.101(1)(b).

The root of the ambiguity in this case stems from the fact that many types of professionals

provide mental health services in Florida. Physicians provide mental health services, depending upon

their specialty, and can avail themselves of the protections of Chapter 766. Psychologists licensed

under Chapter 490 of the Florida Statutes and clinical social workers licensed under Chapter 491 of

the Florida Statutes may also provide services which are commonly called "mental health care". *See*

FLA. STAT. §§ 490.003(4), 491.003(7), 491.003(9). Professionals falling within these later two

disciplines, however, are excluded from the statutory protections of Chapter 766. *Weinstock*, 629 So.

2d at 836-37 ("We agree with the district court below that the exclusion of psychologists from the

various definitions of this term indicates a legislative intent that psychologists not be classified as

health care providers."). In the instant case, it is not clear what type of mental health professional

provided services to Rolle. Thus, because the Court must view the allegations of the Amended

Complaint in the light most favorable to Plaintiffs, the requirements of Chapter 766 are not applicable to the instant claims.[17]

In addition, even when the Court assumes that the two-year limitation period of Section 95.11(4)(b) applies to these claims, the medical Defendants' statute of limitation arguments also fail. This action was initiated within two years of Rolle's death, and "Plaintiffs aver that all conditions precedent to the filing of this action have been complied with and been met . . . ." (Doc. No. 37, ¶ 17).[18] Whether such requirements have in fact been met is an issue more appropriately addressed on motion for summary judgment or at trial.

Lastly, Defendants' argument that Plaintiffs are attempting to state a cause of action for punitive damages in Count IX, Count XI, and Count XV is not well taken. *See, e.g.*, *Fla. E. Coast Ry. Co. v. McRoberts*, 111 Fla. 278 (1933) (describing that under the common law exemplary or punitive damages may be assessed when the wrongful act in question was committed with malice, moral turpitude, wantonness, willfulness, outrageous aggravation, or in reckless indifference to another person's legal right in tort actions). Defendants cannot rely on the provisions of Section 768.72, Florida Statutes, in this action to cause dismissal of such claims. The Eleventh Circuit has held that Section 768.72, which requires a plaintiff to obtain leave of court before including a prayer for punitive damages in the complaint, is preempted by Federal Rule of Civil Procedure 8(a)(3). *See*

_____

[17] Should counsel for Plaintiffs choose to continue to assert these claims in future pleadings, he should follow the requirements of Federal Rule of Civil Procedure 11. If the allegedly wrongful acts were performed by a licensed physician and that the pre-suit requirements of Chapter 766 were not timely satisfied, then the claim is at least premature. (*See* Doc. No. 41, pp. 4-5).

[18] Because this paragraph specifically indicates that the requirements of the Florida Wrongful Death Act have been satisfied, it would be inappropriate to limit the broad assertion contained in the quoted text.

*Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1299 (11th Cir. 1999), *vacated in part*, 204 F.3d 1069 (11th Cir. 2000).

### D.      Section 1985 Claim

Defendants move to dismiss Count XVI on the grounds that the Amended Complaint contains merely conclusory allegations and fails to identify any racial animus or a protected class of individuals. (*See* Doc. Nos. 41, 43, 44). Plaintiffs' response, repeated almost verbatim in at least three separate papers, is as follows:

> Plaintiff is suing also for violation of his rights under 42 USC § 1985. Plaintiff does not agree with Defendants assertion that Rolle must be in a protected class of individuals. Plaintiff has alleged as required by 42 USC § 1895 that the Defendants conspired to deprive Rolle, and other Plaintiffs and inmate of their federally protected civil rights. This is constant with case law going back all the way to 1962.

> To prove a prima facie case of civil conspiracy under § 1983(3) the plaintiff must show "an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights." Here, Plaintiff has properly pled the required elements under 42 USC § 1985, and accordingly, Defendants Motion to Dismiss this Claim should be denied.

(*See* Doc. Nos. 52, 54, 55, citations omitted).[19] Plaintiffs' arguments are wholly without merit.

Section 1985(3), the only portion of the statute which is plausibly applicable in this case, provides a cause of action for a conspiracy to deprive "any person or class of persons of the equal protection of laws." 42 U.S.C. § 1985(3). The Eleventh Circuit has held that Section 1985(3) "protects two types of classes: (1) those kinds of classes offered special protection under the equal protection clause, and (2) classes that Congress was trying to protect when it enacted the Ku Klux Klan Act." *Farese v. Scherer*, 342 F.3d 1223, 1229 n.7 (11th Cir. 2003) (internal quotations omitted)

---

[19] This same exact response was also asserted by counsel in Case No. 06:06-cv-715-Orl-31JGG. (Doc. No. 54, p. 21).

(quoting *Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1147 (11th Cir. 1996)). The Eleventh Circuit also has found that prisoners are neither a class offered special protection under the equal protection clause nor a class that Congress intended to protect when it enacted § 1985(3). *Id.*

There are no allegations in the Amended Complaint which suggest Rolle was a member of class protected under the equal protection clause, nor are there allegations that he is the member of a class of individuals of the type that Congress was trying to protect when it passed the law codified at Section 1983. Thus, Plaintiffs' claim must rest on the proposition that he is an inmate or pretrial detainee. (See Doc. No. 37, ¶ 141). As noted above, the Eleventh Circuit has already considered and discarded that argument. *Farese*, 342 F.3d at 1229 n.7.

Furthermore, the allegations of the Amended Complaint in support of the Section 1985(3) claim amount to little more than conclusory allegations wholly lacking a factual basis. *See Kearson v. S. Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985) ("In civil rights and conspiracy actions, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint."). Defendants purportedly "did act together" and "conspired" or were "acting in concert", but Plaintiffs do not allege any factual basis for such collusive behavior. (Doc. No. 37, ¶ 141). Nor do Plaintiffs allege, as is required, that "the conspirators were motivated by . . . racial, or otherwise class-based, invidiously discriminatory intent." *Id.*

Thus, Plaintiffs' Section 1985 claim must be dismissed.

### E.    Fictitious Party Pleading

"[F]ictitious party practice is not permitted in federal court." *New v. Sports & Rec., Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997); *see also Lewis v. City of Montgomery*, 2006 W.L. 1761673, *2 (M.D. Ala. 2006) ("In general, 'fictitious-party pleading is not permitted in federal court.' "); *cf.*

FED. R. CIV. P. 10(a) ("[T]he title of the action shall include the names of all the parties."). The description of the John Doe Defendants in the instant case does not sufficiently describe such individuals in a way which permits their identification. *See Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992) (finding plaintiff's description of "Chief Deputy of the Jefferson County Jail John Doe" sufficient because the proposed defendant existed and plaintiff adequately described the person to be sued so that the person could be identified for service). Thus, Plaintiffs are improperly attempting to bring claims against fictitious parties, and the Court dismisses the John Doe defendants from this lawsuit.

## IV. Notice To Counsel

The Court has taken considerable time to scrutinize the submissions of the parties in the instant case, including the pleadings, motions to dismiss and responses. In several instances, it appears that counsel have failed to achieve the high level of professionalism that the Court generally observes among the members of its bar. The pleadings contain vague and conclusory statements and errors and omissions. Several arguments advanced by counsel on both sides in this case ignore controlling authority, and no party brought such authority to the Court's attention. Such conduct, if not directly prohibited by the Rules regulating the Florida Bar, runs sufficiently close as to warrant closer scrutiny by the Court. *See* LOCAL R. 2.04(d); FLA. BAR R. 4-3.3(3) ("A lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.").

The Court finds it necessary to remind counsel of their obligations as officers of the Court. Every attorney is an officer of the Court. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.

1994). Every attorney has a duty to diligently research the client's case and a duty of candor to the tribunal. *Id.* Where, as is the case here, there is a specific pleading signed by an attorney, such pleading is given a presumption of truth and deserves deference by the Court. *Id.* The Court will not assume that counsel has made false representations to the Court. *Id.* The Court presumes that Plaintiffs' counsel understands the choices and representations that are made in such pleadings. *Id.* The Court also presumes that counsel understands that such representations have important legal consequences which raise significant ethical implications. *Id.*

Lastly, all counsel should also be aware that they may be held personally liable for costs, expenses and attorneys' fees if they act "unreasonably and vexatiously", *see* 28 U.S.C. § 1927, and should be familiar with the requirements and obligations of Federal Rule of Civil Procedure 11. To insure that counsel in this case are familiar with Rule 11, each attorney who has entered an appearance in this lawsuit shall file a notice with the Court certifying that he or she has read Federal Rule of Civil Procedure 11 prior to submitting any additional filings in this case.

## V. Conclusion

Based on the foregoing, the Court rules as follows:

1.     The Court **DISMISSES AS MOOT** Defendants' motions at docket numbers 3, 5, 8, 27, 40;

2.     The Court **GRANTS IN PART** and **DENIES IN PART** the Motions To Dismiss of Defendants at docket numbers 41, 43, 44, 51 as follows:

   a.     Count VII, Count VIII, Count X, Count XIV and Count XVI are dismissed without prejudice; and

      b.     John Doe I, John Doe II and John Doe III are dismissed as Defendants in this action;

3.     Prior to submitting any additional filings in this action, every attorney who has entered an appearance shall file a notice with the Court certifying that he or she has read Federal Rule of Civil Procedure 11. Counsel who fail to file such notice shall have their submission(s) stricken from the record until they comply with this Order; and

4.     The Court **GRANTS** Plaintiffs leave to file an Amended Complaint within ten (10) days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January   30  , 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

-29-